# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DAVID MINNICK,

Petitioner,

v.                                        Case No. 19-CV-33

DAN WINKLESKI[1],

Respondent.

# DECISION AND ORDER DENYING PETITION
# FOR A WRIT OF HABEAS CORPUS

## 1. Facts and Procedural History

After returning from work on November 15, 2010, David Minnick received a call from an apartment manager. (ECF No. 13-2 at 4.) The manager was looking to speak to Minnick's wife and said he had an apartment to show her. (ECF No. 13-2 at 4.) This was how Minnick learned that his wife was leaving him.

When his wife returned home, they talked. She said she was in love with another man and was moving in with him. (ECF No. 13-2 at 4.) The conversation was long. (ECF

---

[1] Minnick is incarcerated at the New Lisbon Correctional Institution. *See* https://appsdoc.wi.gov/ (last visited October 20, 2020). The warden of the institution is Dan Winkleski. *See* https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/NewLisbonCorrectionalInstitution.aspx (last visited October 20, 2020). In accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly.

No. 13-2 at 5.) Minnick was drinking, but they both were calm. (ECF No. 13-2 at 5.) Minnick would periodically go to the basement to get beer (ECF No. 13-2 at 5) and on one of these trips to the basement he retrieved his rifle. (ECF No. 13-2 at 5-6.) Without saying anything (ECF No. 13-2 at 5-6), he pointed the rifle at his wife's face (ECF No. 12-2 at 28). She tried to duck under the table, and Minnick struck her in the head with the butt of the rifle. (ECF Nos. 12-2 at 28; 13-2 at 5-6.)

When she fled from their home on foot, Minnick followed her, firing his rifle. (ECF No. 12-5, ¶ 2.) She made it to her parents' house across the street, where Minnick broke out windows, attempted to break down the door, and repeatedly fired into the residence, grazing his father-in-law with a bullet. (ECF No. 12-5, ¶ 2.) Minnick returned to his home, and, after he refused law enforcement demands that he come outside, a sheriff's department tactical team eventually forcibly entered his home and arrested him. (ECF No. 12-2 at 29.)

"Minnick was charged with aggravated battery, attempted first-degree intentional homicide, four counts of first-degree reckless endangerment, and attempted burglary, all by use of a dangerous weapon, and with endangering safety by reckless use of a firearm." (ECF No. 12-5, ¶ 3.) He initially pled not guilty by reason of insanity (NGI), attributing his crimes to his post-traumatic stress disorder (PTSD). But after his attorney, Laura Walker, allegedly assured him that he would receive no more than ten years in prison (ECF No. 12-5, ¶ 8), Minnick withdrew his NGI plea and pled no contest

in exchange for the attempted homicide charge being dismissed but read in (ECF No. 12-5, ¶ 3). Notwithstanding Walker's prediction, "[t]he court imposed a forty-one-year sentence: twenty-seven years' initial confinement and fourteen years' extended supervision." (ECF No. 12-5, ¶ 4; *see also* ECF No. 12-1.)

Following sentencing Minnick attempted to withdraw his plea on the ground that it was not knowing, intelligent, and voluntary because it was based on his attorney's assurances that his sentence would be no more than ten years. (ECF No. 12-5, ¶ 5.) At a post-conviction hearing Walker acknowledged that she told Minnick that he would likely receive six to ten years in prison and that the sentences would probably be concurrent. (ECF No. 12-5, ¶ 8.) But she insisted that any estimate she gives a client is always with the caveat that the sentence is ultimately up to the judge. (ECF No. 12-5, ¶ 8.)

The trial court found credible Walker's testimony that she did not give Minnick an unequivocal guarantee of his sentence. (ECF No. 12-5, ¶ 13.) On appeal the court of appeals concluded:

> Minnick has shown no more than that counsel predicted an outcome that did not come to pass. Her misjudgment of the likely sentence is not a basis for an ineffective assistance of counsel claim, *see State v. Provo*, 2004 WI App 97, ,¶18, 272 Wis. 2d. 837, 681 N.W.2d 272, and Minnick's "disappointment in the eventual punishment imposed is no ground for withdrawal of a guilty plea," *see State v. Booth*, 142 Wis. 2d 232,237,418 N.W.2d 20 (Ct. App. 1987).

(ECF No. 12-5, ¶ 14); *State v. Minnick*, 2015 WI App 58, ¶ 13, 364 Wis. 2d 527, 868 N.W.2d 198, 2015 Wisc. App. LEXIS 417.

Minnick then filed a motion for post-conviction relief pursuant to Wis. Stat. § 974.06 wherein he argued that his appellate counsel[2] was ineffective for not arguing that Walker was ineffective for not advising him that, if he could demonstrate a fair and just reason for withdrawing his plea, he could do so prior to sentencing. In an unpublished per curiam decision, the court of appeals concluded that appellate counsel was not ineffective for failing to raise this argument because the new argument was not clearly stronger than the arguments he did raise. *State v. Minnick*, 2019 WI App 1, ¶ 13, 385 Wis. 2d 211, 923 N.W.2d 169, 2018 Wisc. App. LEXIS 892.

Minnick then filed the present petition. (ECF No. 1.) He argues that Walker was ineffective by advising him that he would receive a sentence of no more than ten years (ECF No. 1-1 at 7-8) and by failing to advise him that prior to sentencing he could withdraw his plea for fair and just reasons (ECF No. 1-1 at 8-9). He also argues that his appellate counsel was ineffective for not arguing that Walker was ineffective for not telling him he could withdraw his plea before sentencing. (ECF No. 1-1 at 9-10.)

---

[2] Under the nomenclature adopted by Wisconsin courts, counsel was "post-conviction" counsel. *See State v. Starks*, 2013 WI 69, ¶4, 349 Wis. 2d 274, 281, 833 N.W.2d 146, 150 (discussing the difference between appellate and post-conviction counsel). The court refers to counsel as appellate counsel to avoid confusion with counsel assisting a defendant in a collateral proceeding, for which there is no constitutional right to effective assistance. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)

The Honorable J.P. Stadtmueller screened the petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (ECF No. 7.) The respondent did so. (ECF No. 12.) The case was reassigned to the Honorable David E. Jones following all parties consenting to the full jurisdiction of a magistrate judge (ECF No. 11), and then reassigned to this court following Judge Jones's resignation as a judge. All parties consented to have this court decide the petition. (ECF Nos. 18, 20.)

Minnick has submitted an amended brief in support of his petition (ECF No. 14), the respondent submitted a brief in opposition (ECF No. 22), and Minnick replied (ECF No. 23). The petition is now ready for resolution.

## 2. Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court is permitted to grant relief to a state petitioner under 28 U.S.C. § 2254 only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

5

This is a "stiff burden." *Jean-Paul v. Douma*, 809 F.3d 354, 359 (7th Cir. 2015). "The state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015)); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011).

"Clearly established federal law" refers to a holding "of the United States Supreme Court that existed at the time of the relevant state court adjudication on the merits." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015) (citing *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' federal law if the state court applied an incorrect rule—*i.e.*, one that 'contradicts the governing law' established by the Supreme Court—or reached an outcome different from the Supreme Court's conclusion in a case with 'materially indistinguishable' facts." *Id.* (quoting *Williams*, 529 U.S. at 405-06). A decision involves an unreasonable application of federal law if the state court identified the correct governing principle but applied that principle in a manner with which no reasonable jurist would agree. *Id.*; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)). Thus, a federal court could have the "firm conviction" that a state court's decision was incorrect but, provided that

error is not objectively unreasonable, nonetheless be required to deny the petitioner relief. *Lockyer*, 538 U.S. at 75-76.

3. **Analysis**

3.1. **Ineffective Assistance of Trial Counsel**

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 525-26. The first prong "requires that the petitioner demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* at 525. "What is objectively reasonable is determined by the prevailing professional norms." *Id.* But there is a wide range of permissible conduct, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). The prejudice prong "requires the petitioner to demonstrate a 'reasonable probability that, but for counsel's unprofessional errors,' the outcome would have been different." *Id.* at 526 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009)).

When a claim of ineffective assistance of counsel is presented in a habeas petition, the petitioner faces "a high hurdle." *Hicks*, 871 F.3d at 525. "The Supreme Court has instructed that under these circumstances, [the federal court] must employ a

'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

"In the context of a guilty plea, a petitioner demonstrates prejudice by 'show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Prejudice does not depend on the petitioner being able to prove that, "had he gone to trial, the result of that trial would have been different than the result of the plea bargain." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (internal quotation marks omitted).

In his initial "Postconviction Motion Pursuant to Wisconsin Statutes § 809.30 to Withdraw Guilty Plea" Minnick argued that Walker was ineffective because, in relevant part, she "guaranteed" and "falsely promised" that he would not receive more than ten years of initial confinement. (ECF No. 13-3 at 6, 7.) Likewise, the "Issue Presented" on Minnick's direct appeal was: "Whether Minnick's attorney's inaccurate guarantee he would receive a sentence of no more than ten years confinement was a manifest injustice when Minnick waived the right to have a mental responsibility trial based on this inaccurate information." (ECF No. 12-2 at 4.) His argument was that he should be allowed to withdraw his plea because Walker had given him a "guarantee" and "assured" him that he would receive no more than ten years of initial confinement. (ECF No. 12-2 at 11-13, 15-16, 20-21.) Minnick argued that the circuit court, relying on

an erroneous credibility finding, erred in finding that, rather than a guarantee, Walker offered a mere opinion as to his likely sentence. (ECF No. 12-2 at 15-18.)

Minnick has now abandoned his contention that Walker guaranteed that he would receive no more than ten years of initial confinement. (ECF No. 14 at 10.) He argues in his petition that even giving him an estimate that he would likely receive no more than ten years of initial confinement constituted ineffective assistance. However, the court has not discerned that Minnick made such a claim in his brief to the circuit court or the court of appeals.

Minnick, however, did present such a claim in his petition for review by the Wisconsin Supreme Court. He identified the "Issues Presented for Review" as:

> Whether trial counsel's unreasonable belief and advice that Minnick likely would receive as little as five and no more than 10 years initial confinement should he forgo his right to a trial on charges of shooting at three people denied Minnick the effective assistance of counsel and entitles him to withdraw his resulting no contest pleas.

(ECF No. 12-6 at 3.) He asserted:

> Although raised and argued by Minnick, the circuit court did not address or decide this issue, instead focusing entirely on the included but secondary issue of whether trial counsel "promised" that the sentence would not exceed 10 years initial confinement and concluding that, as a matter of fact, counsel made no such "promise."

> The Court of Appeals affirmed on the same grounds, likewise overlooking Minnick's broader claim that, under the circumstances of this case, trial counsel's advice as to the likely sentence was unreasonable and rendered Minnick's resulting no contest pleas invalid.

(ECF No. 12-6 at 3-4.)

As noted, the court has not identified where Minnick made this argument to the court of appeals. Having failed to fairly present his claim to one complete round of review by the state courts, Minnick ordinarily would not be able to present this claim in a federal habeas petition. *See King v. Pfister*, 834 F.3d 808, 815-16 (7th Cir. 2016). However, the respondent does not argue that Minnick procedurally defaulted this claim. In fact, he concedes that Minnick exhausted his state court remedies as to this claim. (ECF No. 12, ¶ 9.)

Notwithstanding the respondent's concession, the court cannot simply overlook the fact that the claim was never presented to the court of appeals. The absence of a state court decision on the merits of Minnick's claim implicates the nature of this court's review. In the absence of a state court decision on the merits, there is no decision to which the federal court owes deference. Thus, the federal court's review is under the *de novo* pre-AEDPA standard. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Toliver v. Pollard*, 688 F.3d 853, 859 (7th Cir. 2012).

Minnick argues that the pre-AEDPA standard applies, but for different reasons. He argues that this court's review must be under the non-deferential pre-AEDPA standard because the court of appeals misapplied the law when it held that counsel's "misjudgment of the likely sentence is not a basis for an ineffective assistance of counsel claim, *see State v. Provo*, 2004 WI App 97, ¶ 18, 272 Wis. 2d. 837, 681 N.W.2d 272 ...." (ECF No. 12-5, ¶ 14.) According to Minnick, rather than assessing ineffective assistance

of counsel claims on a case-by-case basis as the Supreme Court has required, the court of appeals categorically dismissed the possibility of relief even when defense counsel's estimate of a likely sentence was itself unreasonable. (ECF No. 14 at 14-15.)

But the court of appeals did not suggest that a defense attorney's inaccurate prediction of a likely sentence can never constitute ineffective assistance. All it said was that, based on the testimony from witnesses at the postconviction hearing, Walker's prediction of the likely sentence was not ineffective assistance. Because Minnick had not argued that Walker was also ineffective for simply having provided an unreasonable estimate of the length of the sentence, the court of appeals did not address the standard applicable to such a claim.

Thus, Minnick's claim that Walker was ineffective for providing an unreasonable estimate as to the length of his likely term of initial confinement is subject to the pre-AEDPA *de novo* standard of review, although not for the reasons Minnick argues. The pre-AEDPA standard applies because the last court to issue a reasoned decision, the Wisconsin Court of Appeals, did not address the merits of the claim that Minnick now asserts in his habeas petition.

Turning to the merits of Minnick's claim for ineffective assistance of trial counsel, "[w]hen a defendant considers the government's offer of a plea agreement, a reasonably competent counsel will attempt to learn all of the facts of the case and to make an estimate of a likely sentence." *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir. 1996). "It

is deficient performance for an attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea." *Id.* at 939-40.

Every case has its own unique facts and aggravating and mitigating circumstances. Moreover, criminal sentences vary greatly across judges and counties. Thus, "the sentencing consequences of guilty pleas (or, for that matter, guilty verdicts) are extraordinarily difficult to predict." *Barnes*, 83 F.3d at 940. A court's sentencing "discretion is … extensive, and predicting the exercise of that discretion is an uncertain art." *Id.* "The attorney need not be 100% correct in her prediction of the consequences of pleading guilty and of going to trial, as a mistake, in and of itself is not proof of deficient performance." *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007). "The leeway given counsel stems from the general concept that a court must start with the 'presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004)).

"A gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of a deficiency." *Barnes*, 83 F.3d at 940; *Julian*, 495 F.3d at 495 ("although a mistaken prediction is not sufficient to show deficient performance, in some cases it may be such a gross mischaracterization that it provides a 'strong indication of constitutionally deficient performance.'" (quoting *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999))

(internal citation omitted). "A court may factor the magnitude of the error into its assessment of whether the legal advice was that of a reasonably competent attorney." *Julian*, 495 F.3d at 495.

In an attempt to show that Walker's estimate was unreasonable Minnick emphasizes Walker's lack of experience. (ECF Nos. 14 at 16; 23 at 4.) She had been a practicing attorney for only about two years and could not recall having previously represented someone who had been charged with attempted first-degree intentional homicide. (ECF No. 12-34 at 11.) However, Walker had handled hundreds of criminal cases, including "cases that are similar to this where someone was actually shot." (ECF No. 12-34 at 11.) In one case the victim had been severely injured and required surgery. (ECF No. 12-34 at 14.) That defendant received six years of initial confinement. (ECF No. 12-34 at 14.)

Minnick does not present any other evidence to support his claim that Walker's estimate was unreasonable. He does not, for example, present a record of factually similar cases where every defendant received significantly more than ten years of initial confinement. Nor does he argue that Walker "did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *Barnes*, 83 F.3d at 940. Thus, it is unclear how Minnick expects the court to assess the objective reasonableness of Walker's estimate. It appears that Minnick's argument is simply that, as a matter of

visceral intuition, the court should hold that there was no way that a ten-year sentence was likely for Minnick.

But it *was* reasonable for Walker to predict that Minnick would be unlikely to receive more than 10 years of initial confinement. Minnick's crimes were serious, but there were significant mitigating factors, including his demonstrated history of PTSD relating to his abusive childhood, his 21 years of service in the Navy, his steady employment record following his discharge from the Navy, and, perhaps most significantly, the fact that, at 45 years of age at the time of sentencing, he had no criminal record.

For comparison, the court notes that another habeas petition was recently before this court where the petitioner was likewise incarcerated for endangering multiple lives by firing shots from a rifle. *Bridges v. Champagne*, No. 18-CV-1247, 2020 U.S. Dist. LEXIS 69149, at *1 (E.D. Wis. Apr. 20, 2020), involved a 43-year-old who "fired as many as 15 rounds from an assault rifle toward a crowd of roughly ten people." *Id.* As here, the incident resulted in relatively minor injuries (although it was unclear who injured that victim). However, unlike Minnick, by the time Bridges was in his early-40's he had amassed a lengthy criminal record, and as a result was prohibited from possessing a firearm. On these facts Bridges received a sentence of seven years of initial confinement. The comparison between the two cases is far from perfect, but on a superficial level it supports the reasonableness of Walker's estimate.

14

The circuit court's sentence was not within Walker's estimated range, but an estimate is not unreasonable merely because it proves to be inaccurate. *Julian*, 495 F.3d at 495. Minnick's claim merely highlights the vagaries of sentencing. The parties' sentencing arguments were worlds apart, with the state recommending a term of initial confinement totaling more than 45 years and Minnick arguing for just four (but privately expecting no more than ten) years. (ECF Nos. 12-32 at 21, 29, 44; 14 at 3.) But, in the context of sentencing, two people may both reasonably believe that a widely divergent outcome is likely.

A sentence of not more than ten years would have been consistent with the relevant sentencing factors, *see State v. Williams*, 2018 WI 59, ¶46, 381 Wis. 2d 661, 691, 912 N.W.2d 373, 387, and it was reasonable to consider such a sentence likely. The fact that a predicted outcome ultimately does not come to pass does not, in hindsight, render that prediction unreasonable. Aside from the fact that courts must resist the urge to second-guess the reasonableness of an attorney's conduct with the aid of hindsight, *see Maryland v. Kulbicki*, 577 U.S. 1, 4 (2015), the court must acknowledge that even unlikely things often occur. Consequently, Walker was not ineffective for having advised Minnick that a sentence of not more than ten years of initial confinement was likely.

### 3.2. Ineffective Assistance of Appellate Counsel

Minnick argues that, even if it was reasonable for Walker to initially estimate that he likely would receive no more than ten years of initial confinement, that estimate became unreasonable once the Department of Corrections issued its presentence investigation report and recommended an initial term of confinement of 16 to 22-and-a-half years. He argues that Walker was ineffective for not then advising him that he could withdraw his plea if he could demonstrate a "fair and just reason" for doing so, *see Minnick*, 2019 WI App 1 n.4 (citing *State v. Jenkins*, 2007 WI 96, ¶34, 303 Wis. 2d 157, 736 N.W.2d 24).

Minnick did not raise this claim in his direct appeal. Rather, he raised it for the first time in a motion for post-conviction relief pursuant to Wis. Stat. § 974.06 and in conjunction with a claim of ineffective assistance of appellate counsel. Therefore, the court must likewise consider this claim through the lens of ineffective assistance of appellate counsel.

The respondent argued in his answer

that this claim is procedurally defaulted because the court of appeals resolved it based on an independent and adequate state procedural rule. Specifically, the court held that the claim was not clearly stronger than the ineffective assistance claim that Minnick raised in his first postconviction motion. Thus, the court held, Minnick could not show that postconviction counsel's ineffectiveness was a sufficient reason under Wis. Stat. § 974.06(4) for his failure to have raised the claim earlier.

(ECF No. 12, ¶ 5.) However, this argument is not raised in the respondent's brief. The respondent having abandoned the argument, the court does not consider it further.

Minnick again argues that the court must assess his claim under the pre-AEDPA standard. However, the basis for Minnick's argument is unclear. He states:

> The Wisconsin Court of Appeals' conclusion that Walker reasonably concealed the option of seeking presentencing plea withdrawal from Minnick is based on both irrational findings of fact and unreasonable application of controlling Supreme Court authority. As., [sic] because that court's conclusory assertion that Minnick was not prejudiced by Walker's deficient performance is both contrary to and an unreasonable application of the controlling prejudice standard under *Hill*, review of both prongs of the ineffectiveness standard is de novo. 28 U.S.C. §2254(d)(1)&(2).

(ECF No. 14 at 18.) Later he states:

> Significantly, the Court must keep in mind the standard of review here. Minnick is not challenging the denial of a "fair and just reason" motion. The state circuit court did not comment or rule on whether it would have granted such a motion. Instead, it noted the importance to its analysis of the fact that such a motion is subject to a far more lenient standard than the "manifest injustice" standard applied to Zell's motion on the original appeal (R12-36:2-3; R12-37:11, 12). Nor, since there was no evidentiary hearing on this point, did the court below make any factual findings subject to deferential review under 28 U.S.C. §2254(e)(1). Review of the underlying "fair and just reason" claim accordingly is *de novo* without deference under the AEDPA. *Panetti*, 511 U.S. at 953-54; *Rompilla*, 545 U.S. at 390.

(ECF No. 14 at 20-21.)

Minnick's assertion that the court of appeals' decision was "both contrary to and an unreasonable application of the controlling prejudice standard …" is not a reason to apply the pre-AEDPA standard. That *is* the AEDPA standard. *See* 28 U.S.C. § 2254(d).

Further, Minnick's assertion that "the court below [did not] make any factual findings subject to deferential review under 28 U.S.C. §2254(e)(1)" contradicts his earlier assertion that the Wisconsin Court of Appeals' conclusion that Walker reasonably concealed the option of seeking presentencing plea withdrawal from Minnick was based in part on irrational findings of fact. (ECF No. 14 at 18.)

In sum, Minnick has failed to show that the generally applicable AEDPA standard does not apply to the claim that the court of appeals addressed on the merits. Thus, to obtain relief, Minnick must show that the court of appeals' conclusion was contrary to or based on an unreasonable application of federal law or on an unreasonable determination of the facts.

"The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel but with a special gloss when the challenge is aimed at the selection of issues to present on appeal." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)) (internal citation omitted). "Appellate counsel is not required to raise every non-frivolous issue and her performance 'is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised.'" *Long v. Butler*, 809 F.3d 299, 312 (7th Cir. 2015) (quoting *Makiel*, 782 F.3d at 898). "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable.'" *Makiel*, 782 F.3d at 898

(quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)). And a defendant alleging ineffective assistance of appellate counsel cannot satisfy the prejudice requirement of *Strickland* unless he can show that the neglected claim was meritorious. *Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014).

Minnick's appellate counsel testified that he did not raise the claim because he did not believe that Minnick had a "fair and just" reason for withdrawing his plea because the plea agreement was clear that "the State had a free hand at sentencing" and the court had made it clear that it was not bound by any recommendation. (ECF No. 12-38 at 9-10.) He regarded Minnick's interest in withdrawing his plea as simply a desire to have a trial, which case law says is not a sufficient reason for withdrawing a plea. (ECF No. 12-38 at 10.)

The court of appeals accepted the factual findings of the circuit court and held "that postconviction counsel did not perform deficiently because the fair and just motion claim was not clearly stronger than the manifest injustice claim rejected in *Minnick I." Minnick*, 2019 WI App 1, ¶ 13. Minnick argues that the "clearly stronger" standard is a standard distinct from *Strickland*'s reasonableness standard. (ECF No. 14 at 11.)

The Wisconsin Supreme Court's application of the "clearly stronger" standard, *see State v. Romero-Georgana*, 2014 WI 83, ¶46, 360 Wis. 2d 522, 545, 849 N.W.2d 668, 679; *State v. Starks*, 2013 WI 69, ¶6, 349 Wis. 2d 274, 282, 833 N.W.2d 146, 150, has been

rightly criticized for seeming to add a third element to the *Strickland* analysis and suggesting that showing a claim was "clearly stronger" is the exclusive means of showing appellate counsel was ineffective. *Walker v. Pollard*, No. 18-C-0147, 2019 U.S. Dist. LEXIS 150379, at *50 (E.D. Wis. Sep. 4, 2019). But as developed by the Court of Appeals for the Seventh Circuit, *see, e.g.*, *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985), and adopted by the United States Supreme Court, *see Smith v. Robbins*, 528 U.S. 259, 288 (2000), the "clearly stronger" standard does not add a third element to the ineffective assistance analysis. Rather, it is merely one way a defendant may show that appellate counsel was unreasonable for not raising a claim on appeal. Appellate counsel also may be ineffective for failing to raise a claim that is equally as strong as (although not clearly stronger than) the claim raised. *See Walker*, 2019 U.S. Dist. LEXIS 150379, at *55. But the court of appeals misapplied federal law in Minnick's case only if the "clearly stronger" standard it applied was not the appropriate way to assess the reasonableness of appellate counsel's actions.

Having said all of that, however, the court begins its analysis with the question of prejudice. *See Ashburn*, 761 F.3d at 751 (quoting *Morgan v. Hardy*, 662 F.3d 790, 802 (7th Cir. 2011) ("As the Court noted in *Strickland*, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"). The court of appeals addressed the question of prejudice only in a footnote, stating, "Although we need not address

prejudice, we note that Minnick could not establish prejudice because the sentencing court was charged with exercising its independent judgment, and the views of the presentence investigation report author and counsel were not controlling." *Minnick*, 2019 WI App 1 n.5 (internal citations omitted).

Only if Walker was actually ineffective was Minnick prejudiced by appellate counsel's failure to argue that Walker was ineffective. *See Ashburn*, 761 F.3d at 751. For Walker to have been ineffective it must have been unreasonable for her to have failed to advise Minnick of the possibility of withdrawing his plea if he could show a "fair and just reason" for doing so. Moreover, to establish prejudice Minnick must also show *both* that there was a "reasonable probability" that he would have moved to withdraw his plea had Walker informed him that it might be possible for him to do so, *see Hill*, 474 U.S. at 59, *and* that the circuit court would have allowed him to withdraw his plea.

Undoubtedly, Minnick was not the first defendant to encounter a recommendation in a PSI report that was substantially higher than his lawyer had estimated he would receive. Yet he has not offered any evidence that it is not only routine but expected that any reasonable attorney in that situation would advise her client of the possibility of withdrawing his plea. The extraordinary nature of Minnick's argument was emphasized by the prosecutor in his argument before the circuit court when he contended:

> If it is found ineffective that you do not go back to your client when you
> get the presentence recommendation and actively advise them or tell

them, hey, you might want to withdraw your plea, it would change the way we litigate in this state. The expectation for every defense counsel is every time that presentence result came in there would have to be a brand new discussion and there would have to be fair and just withdrawals of pleas because the presentence was worse than you thought it was going to be all over the landscape of Wisconsin criminal courts.

(ECF No. 12-37 at 17-18.)

Far from being so routine as to be expected of any reasonable attorney, the extraordinary nature of Minnick's argument is underscored by the fact that he has not identified a single case where a defendant was allowed to withdraw his plea because of an unexpectedly high recommendation in a PSI report. In fact, Wisconsin courts have expressed skepticism at the idea that a harsh sentencing recommendation in a PSI report would constitute a "fair and just reason" for withdrawing a plea. *See State v. Leitner*, 2001 WI App 172, ¶33, 247 Wis. 2d 195, 210, 633 N.W.2d 207, 214 (affirming denial of motion to withdraw plea and noting that it appeared that the defendant's true reason for moving to withdraw his plea was "fear of a harsh sentence due to the presentence report") (citing *State v. Booth*, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987) (affirming denial of motion to withdraw plea and noting that "[a] defendant may not delay his motion [to withdraw his plea] until he has the opportunity to test the weight of potential punishment" before seeking to withdraw his plea)); *see also State v. Lopez*, 2014 WI 11, ¶82, 353 Wis. 2d 1, 40, 843 N.W.2d 390, 410 (affirming denial of motion to withdraw plea and noting that there was reason to suspect that the defendant's true motivation for wanting to withdraw her plea was because the PSI

recommended a harsh sentence and a co-defendant had just received a lengthy sentence).

Because Minnick has failed to show that any reasonable attorney in Walker's position would have advised Minnick of the possibility of withdrawing his plea following receipt of the PSI report, appellate counsel was not ineffective for having failed to raise the argument.

Additionally, or alternatively, Minnick has failed to show that there is a reasonable probability that he would have moved to withdraw his plea had Walker informed him of the possibility of doing so. As Minnick acknowledges, the PSI report did not cause Walker to change her estimate regarding the length of the sentence. Specifically, Minnick asserts that he "confronted Walker about this discrepancy [between her estimate and the PSI recommendation], but she pooh-poohed it as meaningless, and doubled down on the advice that a sentence of ten years or less was 'likely.'" (ECF No. 14 at 19.[3])

Minnick has not shown that it was unreasonable for Walker to persist in her belief that a sentence of not more than ten years was likely. For example, he has not shown that PSI recommendations are a reliable predictor of ultimate sentences in

---

[3] Minnick supports this factual assertion only with a citation to his Wis. Stat. § 974.06 motion for post-conviction relief that he filed in the circuit court wherein he made an identical assertion but without any citation. (ECF No. 13-5.) Notwithstanding the absence of any affidavit or testimony supporting this assertion, the court accepts it for present purposes.

similar cases or that any reasonable defense attorney would believe that a sentence below the PSI recommended range would be unlikely.

With Walker continuing to reasonably believe that a sentence of no more than ten years was likely, there is no evidence that Minnick would have decided to withdraw his plea had Walker advised him of the possibility of doing so. To the contrary, Minnick was clear that he relied on Walker's expertise and advice in deciding whether to go to trial. (ECF No. 12-34 at 69.) Given that Walker continued to persist in her reasonable belief as to Minnick's likely sentence, even had she advised Minnick of the possibility of withdrawing his plea, she would have continued to advise him to proceed to sentencing, and Minnick would have followed that advice.

Finally, to prove prejudice Minnick would have to show a reasonable probability that the circumstances established "fair and just" reasons to withdraw his plea—that is, that had he sought to withdraw his plea the court would have allowed him to. Because the court has found two independent reasons as to why Minnick has failed to show he was prejudiced by appellate counsel's allegedly deficient performance, it is unnecessary to consider this additional issue. Nonetheless, the court notes that Wisconsin courts have appeared skeptical of attempts to withdraw pleas under similar circumstances. *See Lopez*, 2014 WI 11, ¶82; *Leitner*, 2001 WI App 172, ¶33.

### 4. Conclusion

Walker's estimate that Minnick likely would be sentenced to no more than ten years of initial confinement was reasonable and remained reasonable following issuance of the presentence investigation report. Therefore, he was not denied the effective assistance of trial counsel. Nor has Minnick shown that a reasonable defense attorney in Walker's position would have advised him of the possibility of withdrawing his plea, or that, had Walker so advised him, there is a reasonable probability he would have moved to withdraw his plea. Therefore, he has failed to show he was prejudiced by appellate counsel's alleged unreasonable conduct. Consequently, the court must deny Minnick's petition.

Finally, Rule 11 of the Rules Governing Section 2254 Cases requires the court to consider whether to grant Minnick a certificate of appealability. "The statute governing habeas relief requires a prisoner who seeks to appeal a district court's denial of his petition first to obtain a certificate of appealability by making 'a substantial showing of the denial of a constitutional right.'" *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting 28 U.S.C. § 2253(c)(2)). "The prisoner need not show he is likely to prevail, but he must show that 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Lying at the heart of this case is the reasonableness of Walker's sentencing estimate. The likelihood of the court imposing a particular sentence is a matter about which reasonable jurists may disagree, especially in a case such as this where the range was expansive. Therefore, the court finds that it is appropriate to issue a certificate of appealability as to both of Minnick's claims.

Specifically, the court issues a certificate of appealability as follows:

- Whether Minnick was denied the effective assistance of counsel when Walker stated it was likely that the court would impose a cumulative term of initial confinement of no more than ten years.

- Whether Minnick was denied the effective assistance of appellate counsel when appellate counsel failed to argue that Minnick's trial counsel was ineffective for failing to advise him of the possibility of moving to withdraw his plea.

**IT IS THEREFORE ORDERED** that Minnick's petition for a writ of habeas corpus is **denied**. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the court grants Minnick a certificate of appealability as set forth in this decision.

Dated at Milwaukee, Wisconsin this 20th day of October, 2020.

WILLIAM E. DUFFIN

U.S. Magistrate Judge